### KRICHBAUM v. McDANEL et al.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1922.)

No. 3653.

1. Patents ⊂═⊃328—945,649 and 944,722, for tire protectors, not infringed.

The Warring Patent, No. 945,649, for a tire protector built up of plies of fabric compressed and vulcanized and then coated with quick vulcanizing cement, and the Eshelman patent, No. 944,722, for an inner liner semicured by vulcanizing, *held* not infringed by defendants' use of a quick vulcanizing cement and by their treatment of their inner tire, claimed to be the same as plaintiff's semicuring.

⊂═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Patents ⬉⇒312(3)—Evidence held insufficient to show vulcanization by use.**
Evidence in suit for infringing a patent for tire protectors *held* insufficient to show that vulcanization could or did take place, as claimed, as a result of the heat generated by the use of the tire.

3. **Patents ⬉⇒328—1,137,064, for inner tire, not infringed.**
The Krichbaum patent, No. 1,137,064, for an inner tire with one of the edges secured by wire ring or band and the other intended to overlap and interlock with it, *held* to be given a narrow construction, in view of the prior art, and, so construed, not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit for infringement of patents by Guy V. Krichbaum against William C. McDanel and others. Decree dismissing the bill, and plaintiff appeals. Affirmed.

A. J. Hudson, of Cleveland, Ohio (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for appellant.

Harry Frease, of Canton, Ohio, for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. The opinion of the District Judge in this case is as below. We approve and adopt it, save that we do not think it necessary to decide whether the claims of the Eshelman patent would necessarily be bad for indefiniteness by their reference to semicuring, nor whether there was any known vulcanizing cement sufficiently perfecting the disclosure of Warriner; but these matters are not vital to the result.

The decree is affirmed.

WESTENHAVER, District Judge. Plaintiff's bill is in the usual form, charging infringement by defendants of three United States letters patent, all now owned by plaintiff. One is No. 945,649, issued to J. C. Warring, dated January 4, 1910, being for what is called therein a tire protector; the second is No. 944,722, issued to B. S. Eshelman, dated December 28, 1909, being for what is called therein an inner liner for tires; and the third is No. 1,137,064, issued to Guy V. Krichbaum, dated April 27, 1915. All of them are described as being adapted for insertion between the outer tire or casing and the inner tube, and designed to protect the inner tube, strengthen the casing, and prolong its life in use. The defenses are the usual ones of invalidity and noninfringement.

This case has been carefully prepared, well tried, and ably argued. The record is quite voluminous, consisting of numerous documentary and physical exhibits, and the evidence of a large number of witnesses who testified orally before me with relation to the vital points in controversy. Many contentions are urged by counsel, and while in my consideration of this case I believe I have duly examined and weighed all of them, I shall in this memorandum discuss briefly those only upon which it seems to me the case turns.

---

⬉⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

[1] The defendants are a partnership, doing business under the name and style of Remiler Rubber Company. They also make what is called an inner tire, adapted to be inserted between the outer casing and the inner tube, and designed to give protection to the inner tube, strengthen the casing, and prolong its life in use. Defendants' inner tire is made or built up of plies•of tire fabric to the required thickness and saturated with a suitable rubber composition. It is formed on a core or a mandrel of a specified diameter, determined by the exact size of the tire casing in which it is to be inserted, and, after being built up to the required thickness, is then compressed in a mold and vulcanized in the manner customary in making rubber tires for automobiles. In this process of fabricating, shaping, compressing, and vulcanizing the inner tire, defendants do nothing that is not a standard practice in the rubber tire industry, and fully known and disclosed in the art prior to the earliest date of any of plaintiff's patents. Thereafter its exterior surface is given a coating of rubber solution called a quick vulcanizing cement. The alleged infringement as to the Warring and Eshelman patents is based, first, on the extent to which the inner tire is vulcanized or cured; and, second, on the application thereto, after vulcanization, of this coating of rubber solution or quick vulcanizing cement.

Warring's patent discloses merely a tire protector built up of three strips of canvas, or other fabric having the same general properties as canvas, and thoroughly impregnated with a solution of rubber suitably prepared for vulcanizing. It is not shaped, formed, or vulcanized. Such compression or shaping as is given it is obtained only after it is inserted in the casing and as a result of the pressure supplied by inflation and use. The claim is that this tire protector thus prepared is vulcanized in use by such heat as is generated by the tire as it passes over the road. The claim is also made that the coating of quick vulcanizing cement applied by defendants to their inner tire is likewise vulcanized by the heat generated by the tire while in use, and that therefor claims 3 and 4 of Warring's patent are infringed.

Eshelman's patent discloses an inner liner built up of suitable strips of absorbent flexible material, such as duck or canvas, impregnated with a rubber solution. The inner tire, when thus built up, is then run through a pair of rolls, which exert considerable pressure and compress the strips, so that they adhere very closely together and become substantially one piece. They are then placed in a mold and given a shape corresponding to the diameter and width of the tire with which the liner is adapted to be used, and thereafter subjected to the vulcanizing process. The patent specifications say:

"The liners are removed from the vulcanizing oven before they are completely cured, resulting in a liner in what is technically known as semicured condition. This will leave the liner in a pliable and flexible condition; however, care is taken to carry the vulcanizing sufficiently far so that the rubber is not too sticky."

Thereafter, and as a final step, a rubber solution prepared for quick vulcanizing is applied to the exterior surface of the liner. All the claims call for semicuring as above described, and some claims also call for the coating of a rubber solution suitably prepared for quick

vulcanizing. No formula or process is given for this quick vulcanizing rubber solution, nor is any disclosure made whereby the stage of vulcanization known as semicured may be determined or ascertained.

The alleged infringement of these two patents will be considered together. It appears from the foregoing that the charge of infringement comes down to the use of a coating of a rubber solution suitably prepared for quick vulcanizing and to the semicuring by incomplete vulcanization. The first is said to infringe the claims of both patents, and the second all the claims of the Eshelman patent.

The application of a rubber solution or quick vulcanizing cement to similar fabrics and tire protectors is old in the art and in commercial practice. What plaintiff really relies on is the vulcanizing and consequent union of the tire protector or inner tire, to the outer casing, said to be due to the heat generated by the tire while in use acting upon the quick vulcanizing cement. The result thus said to be obtained is the main support of the infringement charged. This charge cannot, in my opinion, be sustained. Defendants use a standard vulcanizing cement. Solutions of this character were made and in existence, and used for vulcanizing or cementing rubber to rubber, prior to plaintiff's earliest patent date. Plaintiff does not and never has prepared or used a quick vulcanizing cement of his own preparation or manufacture, but has, like defendants, bought his cement from manufacturers, and is not even familiar with the formula for making that which he uses. Plaintiff's patent specifications do not disclose any process whereby a solution of rubber or quick vulcanizing cement can be made, and none is known to the art, whereby vulcanization can be obtained by such heat as is generated by a tire in use. As a process patent it is void for want of such a disclosure and for the reasons stated in Featheredge Rubber Co. v. Miller Rubber Co. (D. C.) 250 Fed. 258, affirmed (6 C. C. A.) 259 Fed. 565, 170 C. C. A. 527.

[2] Furthermore, I am of opinion that this fundamental idea that vulcanization can or does take place, as claimed by plaintiff, as a result of the heat generated by the use of the tire, is without foundation to support it. Vulcanization results from the action of heat upon the sulphur in the rubber compound. The sulphur must be melted before it can be fused with the rubber, thereby changing its characteristics, and, until thus melted and fused, no vulcanization, either in the technical, commercial, or practical sense of the word, takes place. The melting point of sulphur is 238 degrees Fahr. The usual vulcanization process is to subject the rubber compound to live steam for a period of time required to vulcanize or cure to the desired degree of completeness. The heat generated in a tire from use, the evidence shows, seldom, if ever, exceeds 135 degrees. Defendants' [plaintiff's] expert, Delacroix, alone expresses the view that vulcanization can take place at a lower temperature than 235 degrees. He expresses the view, and quotes an authority to support him, that vulcanization may take place at a temperature as low as 100 degrees Cent.—that is, 212 degrees Fahr.—if the rubber compound is subjected to this heat for a period of several hours. He also seems to entertain the view that rubber articles, even when fully vulcanized, will vulcanize to each other, if left

in contact for a prolonged period of time. These views, if not fanciful, are as yet only theoretical, and the changes which take place under these conditions, whatever they are, cannot be accepted as vulcanization in the sense in which vulcanization is understood in commercial practice. This general understanding of the term in the art or industry must be accepted as controlling.

Much evidence was introduced and many tests made in my presence to determine whether or not vulcanization had taken place between one of defendants' inner liners and a tire casing in which it had been inserted and used. An adhesion undoubtedly had taken place, but the weight of the evidence and my own observations of the tests as made convinces me that the result was not a vulcanization, but merely an adhesion, such as results from the cementing together of two articles.

Much testimony was also introduced and many experiments made in my presence to determine whether or not defendants' inner tires were undercured, or semicured, or fully cured. A consideration of this testimony and of these tests, including the testimony of defendants' [plaintiff's] expert, Emil Delacroix, convinces me that defendants' inner tires are fully cured, and not semicured. This condition of cure, so called, is a result of the vulcanizing process. Rubber, when fully cured, is elastic, preserves its shape, and, when stretched or distorted, will return to that shape. One of the tests relied on and made in my presence is whether or not the rubber, when stretched, will snap back without being lengthened as a result of the stretching. If the rubber is not fully vulcanized, it is said to be partly cured, or undercured, while semicured would seem to be one-half cured.

Plaintiff's patent specifications call for semicuring, but no standard or method is disclosed whereby this condition may be obtained or determined, and, according to the testimony, it appears to be as variable as the opinion of each individual called on to determine the condition. Certainly the evidence does not show any trade practice or understanding whereby one skilled in the art could practice the Eshelman invention, so far as it depends on semicuring. This indefiniteness or failure to make an adequate disclosure would also call for the application of the rule stated in Featheredge Rubber Co. v. Miller Rubber Co., supra; but, as already said, I am convinced from the evidence that defendants fully cure their inner tires and do not attempt to practice the Eshelman invention, either by semicuring, or partially curing, or undercuring.

[3] The Krichbaum patent discloses an inner tire made substantially in the same manner as defendants', except as to the special features now to be described, which embody the alleged invention and are said to be infringed. The inner edges are not united, but free, and sufficiently long so that there may be an overlapping of the two. One of these edges has secured therein a wire ring or band. As an alternative, the patent describes in the place of the wire ring a nonextensible and fairly rigid material, meaning thereby evidently one having properties which will enable it to function in the manner of the wire ring. The other or free edge of the inner tire is so constructed that it will overlap and pass the edge which carries the wire. The wire ring, it is said, will lie between the beads which are usually formed upon the edges of

the outer tire, and will be securely anchored there, so that the wire edge may not crawl or creep up the side walls of the inner tire, and the overlapping free edge will interlock with it. All of the claims call distinctly and unequivocally for one edge with the wire ring or other nonstretchable material associated therewith, and for the other edge unsecured and adapted to overlap and lock around the first-mentioned edge when the inner tube of the tire is inflated.

Whether this construction is patentably novel and embodies invention, in view of the prior art, is admittedly a close question. The primary examiner refused to allow the patent in view of United States letters patent to Doughty, No. 608,188, dated August 2, 1898; Murray, No. 946,557, dated January 18, 1910; and British patents No. 2,-892, 1895, La Société Des Pneumatiques Francais, February 9, 1895; No. 24,338, Whiteway & McIntosh, November 23, 1909; No. 7,515 to Barton, dated January 5, 1911. He stoutly maintained this view that no patentable novelty was shown, despite several rearguments on behalf of the applicant. On appeal the Board of Examiners in Chief, consisting only of two members, reversed the decision of the primary examiner and recommended that the application be allowed, with certain proposed new claims as substitutes for the pending claims. The claims thus recommended were carried into the patent. On this hearing, three additional patents are cited, of which, however, it seems to me that only United States letters patent No. 1.075,917, issued to Jackson & Sherbondy, dated October 14, 1913, has any real pertinency.

This pronounced difference of opinion between the primary examiner and the two Examiners in Chief emphasizes the closeness of the question of patentability. The opposing considerations are well summed up in their respective opinions, although it seems to me that neither gives sufficient weight to Fig. 6 of Doughty and the disclosures thereby made. If the question were presented to me, free from the presumption of validity which is due to issued letters patent, I might be inclined to agree with the primary examiner; but it is not so clear that I feel warranted in overthrowing that prima facie presumption. A narrow construction, however, is required, and plaintiff is entitled at most to protection only of the features specially described and claimed.

Plaintiff's inner tire does not, in my opinion, infringe the Krichbaum patent. As already stated, this patent calls for a wire band, or a nonstretchable material functioning as a wire band, associated with one edge of the inner liner, and for a free edge of sufficient length, when the inner tube and casing are inflated to fullest capacity, to overlap and lock around the wire band. This is the substance of plaintiff's invention. His patent was allowed only because of this method of construction and the resulting functions claimed to be thereby obtained. His patent claims were rewritten and so limited as to call specifically for this method of construction and mode of operation. The wire ring is required to be of such diameter as will lie between the beads of the outer tire. This was relied upon to anchor the inner tire. The free edge was required to be of sufficient length to overlap the wire ring. This was relied upon to interlock the wire ring and the free edge. The adjustability of the inner tire to the outer tire, and the interlocking of

the two edges when the inner tube is inflated, claimed as the advantages of plaintiff's invention, are supposed to be accomplished solely by this overlapping and interlocking. These obviously were the considerations which induced the Examiners in Chief to reverse the primary examiner.

Defendants' inner tire is not so constructed as to embody these features. The wire ring is placed seven-eighths of an inch from the edge with which it is associated. The unsecured or free edge is not so constructed as to overlap the wire ring. None of the witnesses who testified before me maintained that this free edge does overlap and lock around the wire ring. There was some dispute as to whether the edges themselves do not thus overlap. The greater weight of the evidence, it seems to me, is that if there is any overlapping, it is relatively slight; but, conceding all that is claimed by plaintiff for Plaintiff's Exhibits 7, 13, and 21, said to be specimens of defendants' inner tire, it cannot be said that the unsecured or free edge passes or overlaps the wire ring and interlocks with it. Furthermore, defendant's inner tire is not so constructed that the wire band lies between the beads of the outer tire; on the contrary, it lies below the bead and against one side of the outer tire casing, and is held in this position by the pressure of the inner tube when inflated. Wire rings in tire protectors or inner liners, held in this way, are shown in the prior art, and the Board of Examiners in Chief distinguished plaintiff's invention from one of them upon this specific ground. The prior art above cited also contains instances of wire rings or similar nonextensible material, and tires or tire protectors with overlapping edges. In view of this art and the narrow ground upon which plaintiff's patent was allowed, I am of opinion that plaintiff's patent claims are not infringed by defendants' inner tire.

Plaintiff's bill will be dismissed, at its cost.

⨺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes